**Javier ZAYAS and all others similarly situated, Appellants–Plaintiffs,**

v.

**GREGG APPLIANCES, INC. d/b/a H.H. Gregg Appliances, Appellee–Defendant.**

No. 49A02–9511–CV–664.

Court of Appeals of Indiana.

Feb. 11, 1997.

Transfer Denied June 10, 1997.

George M. Plews, Plews Shadley Racher & Braun, Indianapolis, M. Scott Barrett, Lawrence Walner and Associates Ltd., Chicago, IL, Carolyn Small Grant, Grant & Grant, Indianapolis, for Appellants-Plaintiffs.

Jeffrey C. McDermott, Matthew C. Breman, Krieg DeVault Alexander & Capehart, Indianapolis, for Appellee-Defendant.

## OPINION

SULLIVAN, Judge.

appellee Gregg Appliances, Inc. d/b/a H.H. Gregg Appliances' (Gregg) motion to dismiss.

We affirm.

The sole determinative issue is whether or not the trial court erred in granting Gregg's motion to dismiss for lack of subject matter jurisdiction.

The facts relevant to this review are as follows: On August 23, 1993, Zayas purchased an oven, a refrigerator and an ice-maker from the Bloomington, Indiana store of Gregg, a retail merchant in home appliances and electronics. Zayas had the items delivered to his residence and Gregg delivered them for a delivery charge of $45.00. Gregg charged and collected sales tax on the entire amount of Zayas' purchase including the $45.00 delivery charge. Zayas asserts that it was improper to charge sales tax on the delivery charge in question.

Zayas filed a class action suit against Gregg on February 1, 1995 on behalf of himself and all other similarly situated persons. He asserted that Gregg had 1) breached its contract; 2) intentionally, recklessly, and/or negligently misrepresented the proper amount to be collected as sales tax; and, 3) obtained money through misrepresentation or mistake of fact. The complaint sought a declaratory judgment and a "refund" of the amounts charged as sales tax upon the delivery charge. Record at 13. Gregg countered that the complaint should be dismissed because 1) the trial court lacked subject matter over this tax question; 2) Zayas had not exhausted his administrative remedies; and, 3) Zayas failed to join the Indiana Department of Revenue (IDR), an indispensable party to the action. The trial court granted the motion to dismiss on July 20, 1995, without setting forth a rationale for the ruling and judgment of dismissal.

■ Because of the nature of subject matter jurisdiction, i.e. without it the trial court simply does not have the power to decide the case, we must first address Gregg's claim that the tax court has exclusive jurisdiction. The Indiana Code defines the tax court's jurisdiction as follows:

The tax court is a court of limited jurisdiction. The tax court has exclusive jurisdic-

tion over any case that arises under the tax laws of this state and that is an initial appeal of a final determination made by [the IDR]. I.C. 33–3–5–2(a) (Burns Code Ed.Repl.1992).

Zayas argues that his action is not an appeal of a final determination of the IDR as required by the statute (although he concedes that it arises under the tax laws), and that therefore, the tax court does not have exclusive jurisdiction.

The determination turns upon whether an individual may state a cause of action against a retailer for an improperly collected tax. "If a person has paid more tax than the person determines is legally due for a particular taxable period, the person may file a claim for a refund with the [IDR]." I.C. 6–8.1–9–1(a) (Burns Code Ed. Repl.1996). Zayas argues that the language "may" in the statute indicates that it is permissive in nature; therefore, the statute does not foreclose a direct lawsuit against the retailer.

A further examination of the Indiana Code reveals the method in which the determination is made that an individual is entitled to a refund.

A person is entitled to a refund from the department if:

(1) A retail merchant erroneously or illegally collects state gross retail or use taxes under this article from the person;

(2) The retail merchant remits the taxes to the department;

(3) The retail merchant does not refund the taxes to the person; and

(4) The person properly applies for the refund under the refund provisions of the gross income tax law contained in IC 6–2.1.

I.C. 6–2.5–6–13 (Burns Code Ed. Repl. 1995).

The statute indicates that it is contemplated that the consumer should first seek a refund from the retailer and, if unsuccessful, ask for a refund from the IDR. Zayas did neither in the present case.

It is true, as Zayas points out, that the statute does not clearly foreclose the possibility of filing a claim against the retailer for

the wrongful collection, but we agree with Gregg that tax matters are best heard before the tax court. If Zayas' claim were sustained, anyone could forego the jurisdiction of the tax court by failing to file a claim for a refund with the IDR, thereby thwarting the purpose of the statute. Additionally, retailers like Gregg would be subject to possible inconsistent judgments if consumers were allowed to bring actions directly against them. The retailer would have to, in turn, ask the IDR for a return of monies paid to the consumer in a lawsuit.[1]

In *Indiana Dept. of State Rev. v. Indiana Gamma Gamma* (1979) 181 Ind.App. 664, 394 N.E.2d 187, this court addressed the meaning of I.C. 6–2–1–19, a predecessor to I.C. 6–8.1–9–1. The former statute was significantly similar to the present statute and provided that the taxpayer may apply to the IDR for a refund of tax improperly paid to the IDR. This court noted that the language of the statute had "been uniformly interpreted by the courts to be an explicit expression of the intent of the legislature that a taxpayer's sole and exclusive remedy, whether requesting a refund or questioning the legality of the imposition of a tax, is the statutory remedy provided by that section." *Id.* at 191 (citations omitted); *see also UACC Midwest, Inc. v. Indiana Dept. of State Rev.* (1994) Ind. Tax Court, 629 N.E.2d 1295 ("Compliance with the procedures prescribed in [6–8.1–9–1] is the exclusive remedy for relief from taxes paid." *Id.* at 1298). Our Supreme Court has recently addressed this issue in *State of Indiana v. Sproles* (1996) Ind., 672 N.E.2d 1353. The court held that the taxpayer's sole remedy, even when contesting the constitutionality of a tax assessment, was the administrative process. The court noted that previous caselaw does "not suggest that a taxpayer who has a statutory remedy may circumvent it. . . ." *Id.* at 1360.

■ Zayas argues that this is not an action for a tax refund, but an action for return of monies improperly collected by Gregg.[2] The implication of Zayas' subtle argument is

that although Gregg collected the disputed amount as a tax and remitted it to the IDR as such, from Zayas' perspective the amount is a mere purchase price overcharge. The distinction is too fine to gain our acceptance.

With regard to the ancillary position taken by Zayas, we are inclined to agree with Gregg that Gregg collected the tax as an agent for the state under I.C. 6–2.5–2–1. Zayas argues that Gregg only acts as an agent for the state when collecting lawful sales tax. The implication is that improperly collected sales tax is not lawful; therefore Gregg is not an agent of the state and the tax refund provisions would not apply. However, if that were the case, any time a tax were improperly collected by a retail merchant, the consumer could maintain an action against the retailer thereby rendering moot the refund provisions of the statute, as they relate to requesting a refund from the retailer and then applying to the IDR. We decline to take such a reading of the statute. Zayas' assertion would place trial courts in the position of determining whether a tax was improperly collected in order to decide whether the court has subject matter jurisdiction over the issue of whether the tax had been improperly collected.

The reason for Zayas' zealous argument is simple. Zayas' recovery in this case would be $2.25—not a significant amount. However, if he could maintain a class action against Gregg, justice may be done with regard to hundreds or thousands of people who would not otherwise take action in order to receive a small amount. Requiring the plaintiff to file for a refund with the IDR is an obstacle to the class action, which by its very nature circumvents the need for individual plaintiffs to file individual claims. We are inclined to agree with Zayas that the requirement of filing with the IDR may deter many class action suits for tax refunds. However, our legislature has clearly shown that it approves of this practice with I.C. 6–8.1–9–7 which provides that "[a] class action for the refund of a tax ... may not be maintained in any

---

1. It may also be questioned whether or not the retailer could maintain an action against the IDR.

2. As earlier noted, the class action complaint did use the word "refund" in relation to seeking a return of monies allegedly overpaid to Gregg.

court, ... on behalf of any person who has not [first filed a claim with the IDR]" *Id.* This is a class action for a tax refund, and therefore, until the plaintiff files with the IDR, the judiciary of this state lacks subject matter jurisdiction over the cause of action.[3]

The decision of the trial court dismissing appellant's complaint is affirmed.

FRIEDLANDER and BAKER, JJ., concur.

**3.** Absent a clearly stated challenge to the validity of the statutory scheme set forth in Title 6 of the Indiana Code, as herein discussed, any consideration of such a hypothetical question would be demonstrably inappropriate. The statutes here involved are cloaked with a presumption of validity and govern the determination of this case. *South Bend Public Transportation Corp. v. City of South Bend* (1981) Ind., 428 N.E.2d 217; *UACC Midwest, Inc. v. Indiana Dept. of Revenue* (1994) Ind. Tax Court, 629 N.E.2d 1295.